## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM FIRE AND CASUALTY** | : | **CIVIL ACTION** |
| **COMPANY** | : | |
| | : | |
| **v.** | : | **NO. 15-6131** |
| | : | |
| **MORECO CONSTRUCTION, INC.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                        **MARCH 16, 2016**

A roofing subcontractor sued for allegedly failing to properly tarp and cover a roof during home construction causing property damage from rainwater cannot compel its business liability insurer to defend and indemnify it in the suit for faulty workmanship but may compel coverage if the homeowners' property damage is an accident. We do not decide the underlying property damage case. Our role today is to declare whether coverage exists after comparing the "four corners" of the underlying complaint against the roofing subcontractor with the "four corners" of the insurance policy. We are not bound by the nomenclature of the claims but examine the underlying complaint as a whole to determine if the insured subcontractor could be liable for property damage solely due to uncovered faulty workmanship or possibly by a covered accident.

Insurer State Farm Fire and Casualty Company ("State Farm") asks we declare it has no duty to defend or indemnify its insured, roofing subcontractor Moreco Construction, Inc. ("Moreco"). State Farm is presently defending Moreco on a general contractor's claim Moreco negligently failed to properly "tarp, wrap, cover, or otherwise protect" a home while installing a roof. Studying the four corners of the underlying complaint and insurance policy, we find Moreco is being sued for faulty workmanship and State Farm does not owe a duty to defend or indemnify Moreco. We grant State Farm's motion for summary judgment.

## I.  Undisputed Facts[1]

State Farm sold a business owners policy providing Moreco with comprehensive business liability coverage effective January 15, 2013 through January 14, 2014 (the "Policy").[2]  Moreco is a defendant in *Russell Construction, LLC v. Mack-Donohoe Contractors, Inc. and Moreco Construction*, now pending in the Court of Common Pleas for Chester County, Pennsylvania ("Underlying Action").[3]  Moreco sought defense and indemnity from State Farm and it is currently providing Moreco with a defense in the Underlying Action under a reservation of rights.[4]

### A.  The Policy

The Policy provides comprehensive business liability, in relevant part, as follows:

**Coverage L – Business Liability**

1.  When a Limit Of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. …

2.  This insurance applies:

   a.  To "bodily injury" and "property damage" only if:

      (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";[5]

"Occurrence" is defined by the Policy as:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[6]

"Property damage" is defined by the Policy as:

   a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2

   b.  Loss of use of tangible property that is not physically injured or destroyed provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[7]

### B. The Underlying Action

Volkmar Nitz and Laura Nitz hired Russell Construction as general contractor for their home construction project.[8] Russell Construction alleges it "hired" Mack-Donohoe to install a new roof on the property, and Mack-Donohoe, in turn, "hired" Moreco to "actually install" the new roof on the property.[9] Moreco, as subcontractor, "was to properly construct the roof at the property and to ensure that the property was protected from water infiltration at all times."[10]

Russell Construction alleges the Nitz home "was not properly tarped, wrapped, covered, or otherwise protected," allowing rainwater to enter the home causing extensive damage.[11] Russell Construction paid to repair damage to the Nitz home and then sued Mack-Donohoe and Moreco, claiming breach of implied warranty of reasonable workmanship and negligence against Mack-Donohoe and negligence against Moreco.[12]

We are focused today on Russell Construction's negligence claim against Moreco for its alleged failure to exercise reasonable care in obtaining, installing, and securing a covering to the Nitz home to protect it from "a foreseeable rain event;" failure to timely warn Russell Construction the covering on the home was inadequate or improperly secured and the house was susceptible to water damage; failure to correctly and timely coordinate roofing work with others so as to ensure the home was covered and protected; failure to protect the home from damage; failure to adequately instruct their employees on the proper way to perform their tasks; failure to adequately warn Russell Construction of the dangers resulting from the careless and negligent failure to exercise reasonable care; failure to provide, establish, and follow proper and adequate

3

control to ensure the proper performance of tasks; and failure to supervise employees in the performance of their tasks.[13]

## II. Analysis

On summary judgment,[14] we examine whether the Underlying Action asserts claims falling within the definition of "occurrence" in the Policy, triggering its Business Liability coverage and imposing on State Farm a duty to defend and indemnify Moreco. State Farm argues its Policy provides coverage for property damage caused by an "occurrence," defined as an "accident." State Farm reads Russell Construction's allegations against Moreco in the Underlying Action as claims of "faulty workmanship" which do not, under Pennsylvania law, constitute an "accident" for purposes of an "occurrence" in a commercial general liability ("CGL") policy. State Farm further argues any alleged property damage caused by Moreco's defective and faulty workmanship arises purely out of an agreement, formal or informal, between Moreco and Mack-Donohoe to perform work on the Nitz home,  not from any duties imposed by social policy..

### A. State Farm does not owe a duty to defend under the Policy.

An insurer's duty to defend its insured is broader than its duty to indemnify.[15] "Under Pennsylvania law, which is applicable on the insurance coverage issue, a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint."[16] "If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case."[17]

4

If an underlying action against an insured "avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover."[18] In determining an insurer's duty to defend, we must consider only the allegations of the underlying action and may not look outside its "four corners" or consider extrinsic evidence.[19] We view the allegations of the underlying complaint as true and liberally construe the allegations in favor of the insured.[20] If there is any possibility coverage has been triggered by allegations in the underlying complaint, an insurer has a duty to defend.[21] Against these standards, we consider the language of the Policy and the allegations of the Underlying Action to determine whether State Farm has a duty to defend Moreco in the Underlying Action.

### 1. Interpretation of the Policy

Interpreting an insurance contract is a question of law.[22] Our goal "is to ascertain the parties' intentions as manifested by the policy's terms."[23] When the language of a policy is clear and unambiguous, we must give effect to such language, but where a provision in the policy is ambiguous, we construe the policy in favor of the insured "to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."[24]

Relying on the Pennsylvania Supreme Court's decision in *Kvaerner*, State Farm argues the Underlying Action is a claim for "faulty workmanship" against Moreco and does not allege an "occurrence" as defined by the Policy. Like the policy language in *Kvaerner*, the Policy here covers "property damage" caused by an "occurrence."[25] An "occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."[26] State Farm does not define the term "accident" in its Policy.

5

In *Kvaerner*, the Pennsylvania Supreme Court addressed the definition of "accident" required for an "occurrence" under a CGL policy. In the underlying action in *Kvaerner*, Bethlehem Steel Corporation asserted claims of breach of contract and breach of warranty against Kvaerner, alleging it failed to construct a coke oven battery under the terms of agreed upon plans and specifications made part of a contract between the parties.[27] Kvaerner sought defense and indemnity under two CGL policies from its insurer, National Union Fire Insurance Company ("National Union").[28] National Union disclaimed coverage, defense and indemnity based on its conclusion the underlying claims did not constitute an "occurrence" because the policies only covered "accidental" damages.[29]

The Pennsylvania Supreme Court applied the dictionary definition of the word "accident," finding a key term in the ordinary definition to be "unexpected," implying "a degree of fortuity that is not present in a claim for faulty workmanship."[30] The court held:

> [T]he definition of "accident" required to establish an "occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident" or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond. We are unwilling to do so, especially since such protections are already readily available for the protection of contractors.[31]

Following *Kvaerner*, the Pennsylvania Superior Court in *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., Inc.*,[32] addressed whether claims for ancillary damages resulting from faulty workmanship constitute an "occurrence" under a CGL policy.[33] In *Gambone*, several homeowners sued builder Gambone alleging damage from water leaks as a result of construction defects, poor and faulty workmanship.[34] Gambone sought coverage, defense and indemnity from its insurer. Conceding *Kvaerner's* holding an insurance claim on an "occurrence" based CGL policy cannot be premised on faulty workmanship, Gambone argued the homeowners' "claims

for ancillary and accidental damage caused the resulting water leaks to non-defective work inside the home interiors."[35] The Pennsylvania Superior Court rejected the builder's argument and, relying on *Kvaerner*, found damages from "natural and foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect or consequences caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident' for the purposes of an occurrence based CGL policy."[36]

Our Court of Appeals has applied the holdings of *Kvaerner* and *Gambone* to "occurrence" based CGL policies. In *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, the Court of Appeals held an insurer had no duty to defend its insured, predicting the Pennsylvania Supreme Court would hold an underlying action claiming breach of a contract between the parties is not an "occurrence" triggering coverage under a CGL policy.[37] In *Specialty Surfaces Int'l., Inc. v. Continental Cas. Co.*, the Court of Appeals held an insurer had no duty to defend its insured in an underlying action alleging both breach of contract and negligence claims, finding "faulty workmanship, even when cast as a negligence claim, does not constitute [a fortuitous event]; nor do natural and foreseeable events like rainfall."[38] Finally, the Court of Appeals in *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, similarly found the holdings of *Kvaerner* and *Gambone* direct "faulty workmanship under a contract is not sufficiently fortuitous to qualify as an 'occurrence'";[39] faulty workmanship by a subcontractor does not constitute "an 'occurrence' or 'accident' from the perspective of the contractor";[40] and foreseeable acts like subsequent water infiltration into a structure do not constitute an "occurrence".[41]

In addition to our Court of Appeals, a host of cases from this District, and a sister District, apply *Kvaerner*'s definition of "occurrence" to exclude faulty workmanship claims under CGL policies, even claims pleaded as negligence claims.[42] State Farm argues this line of

cases "unequivocally bar coverage" for faulty workmanship claims like those alleged against Moreco in the Underlying Action. State Farm further argues the Underlying Action's claim against Moreco for "negligence" makes only conclusory allegations without any factual support and, under Pennsylvania law, courts must focus on the allegations in the Underlying Action not the label on the claim.

In response to State Farm's motion, Moreco argues *Kvaerner* and its progeny are distinguishable and there are no allegations in the Underlying Action of a breach of contract or any contractual or quasi-contractual relationship. Moreco argues we must consider the "source of the duty" allegedly breached to determine whether the Underlying Action is a claim for negligence or contract.

We now turn to the allegations of the Underlying Action to determine whether it triggers coverage under the Policy.

### 2.  Allegations in the Underlying Action

Russell Construction alleges Mack-Donohoe "subcontracted" with Moreco, to "properly construct the roof" at the Nitz home and "ensure" the Nitz home "was protected from water infiltration at all times."[43] The Nitz home was not properly "tarped, wrapped, covered, or otherwise protected," allowing rain water to enter the home and cause damage.[44] Damages to the Nitz home are alleged to be "the direct and proximate result of the negligence and carelessness of Moreco, by and through its agents, servants, workmen, subcontractors, technicians and/or employees as follows:

> a.  failing to exercise reasonable care in the following manner:
>
> > i.  failing to properly obtain, install and secure a covering to the home to protect it from a foreseeable rain event;

8

  ii. failing to timely warn or otherwise notify Plaintiff or others that the covering for the home was inadequate and/or was improperly secured and that the house was susceptible to water damage;

  iii. failing to correctly and timely coordinate the roofing work with others so as to ensure that the home was covered and protected; and

  iv. failing to protect the home from damage."[45]

  In the same paragraph, Russell Construction alleges Moreco: failed to "adequately instruct their servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph a. above;" failed to "adequately warn plaintiff and others of the dangers resulting from the careless and negligent failure to exercise reasonable care as set forth in subparagraph a. above;" failed to "provide, establish, and/or follow proper and adequate control so as to ensure the proper performance of the tasks set forth in subparagraph a. above;" and failed to "supervise their servants, employees, and agents in the performance of the tasks set forth in subparagraph a. above."[46]

  State Farm argues these allegations simply state a claim for faulty workmanship against Moreco.  State Farm argues all work by Moreco, including the tarping and wrapping of the roof, constitutes faulty workmanship and cannot be an "occurrence" under the Policy. State Farm argues whether a contract exists does not change the "essence" of Russell Construction's allegations; Moreco's failure to properly construct a roof and keep the Nitz home protected from water infiltration at all times. Moreco's work on the Nitz home, State Farm argues, "had to have arisen from some type of agreement," formal or informal, between Moreco and Mack-Donohoe and the "specifications" to which Moreco performed roofing work on the Nitz home were imposed by mutual consensus, not by breach of a duty imposed by social policy independent of any contract.

  Moreco argues there is no alleged contract or failure to meet contracted-for specifications

9

in the Underlying Complaint, and the duty to protect property of another, here the Nitzes, from damage arises from social policy independent of any contractual requirement.[47] Moreco provides no authority for this proposition, or with any case finding a duty to defend under an "occurrence" based CGL policy based on a duty imposed upon a contractor by social policy independent of the parties' mutual understanding or agreement to perform work.   Russell Construction never pleaded a duty owed by a social policy and we would need to liberally read such a duty into the Underlying Action. If we accepted Moreco's argument, we would eviscerate the policies behind *Kvaerner* and *Gambone*.

Moreco argues we must consider the "source of the duty" allegedly breached, citing two cases from the District of New Jersey, applying Pennsylvania law, and a case from the Western District of Pennsylvania.[48] In both *Wausau Underwriters* and *Schuylkill Stone,* the courts, applying Pennsylvania law, found the allegations in the underlying complaints regarding manufacturing or design defect could possibly constitute an "occurrence" under the relevant policies. In *Robinson Fans*, the court found allegations of a defectively designed product may come within an "occurrence" policy.[49] We find these cases distinguishable, as there are no allegations in the Underlying Action of defective design.

We are constrained by the four corners of the Underlying Action. The Underlying Action unambiguously pleads Moreco "was to properly construct the roof at the property and to ensure that the property was protected from water infiltration at all times." This is the defined obligation in the Underlying Action. Protecting its work, and the homeowner's roof, is indisputably a central part of Moreco's job responsibilities when hired to construct the roof. This is not a situation of pure accident, and Moreco does not, and cannot, argue it is.   As deferential as we must be to the insured's rights to obtain a defense, we cannot imagine a situation where failing to

protect the hired work product, as specifically alleged in the Underlying Action, would not be faulty workmanship. We appreciate the failure to properly tarp is not facially the same as defective installation of windows or stucco or construction of a coke oven battery. But the failure to tarp the roof workspace places the work product at risk in the same manner. We analogize this failure to tarp a roof to failing to caulk windows upon installation leading to property damage from rainwater. The only possible reading of the Underlying Action is Moreco's alleged failure to do the job of securing the roof with tarp caused the property damage. This faulty workmanship, if proven, is contrary to Moreco's obligations owed to the general contractor under the pleaded terms of Moreco's retention as a subcontractor. As pleaded, the property damage is admittedly caused by rainwater entering the home as a result of the failure to secure the tarp.

To show the harm is caused by an accident, Moreco cites Russell Construction's allegation Moreco failed to warn it of faulty workmanship; failed to instruct and supervise Moreco employees; and failed to "provide, establish, and/or follow proper and adequate control so as to ensure the proper performance of the tasks" when tarping and covering the Nitz home.[50] Absent Russell Construction pleading a duty in law of a subcontractor to warn a contractor of its failings in securing property, we cannot convert a faulty workmanship claim into negligence. We find allegations of a potential "failure to warn" of faulty workmanship and "failure to follow proper and adequate control so as to ensure the proper performance of the tasks"  are , again, a reiteration of the same faulty workmanship claim and do not arise from some unpleaded and unidentified duty imposed by social policy. Under Moreco's theory, it could be held liable in tort for failing to warn the general contractor of its failure to provide the workmanship required under their retention. In this stretch, every breach of a subcontractor's obligation would convert

into negligence if the subcontractor did not preemptively admit its breach of the contract. We are not aware of any such claim under negligence law and Moreco does not cite any such authority. Similarly, a negligent supervision claim does not amount to an "occurrence." Our Court of Appeals rejected this argument in *Zurich American*, finding "faulty workmanship, whether caused by the contractor's negligence alone or by the contractor's negligent supervision which then permitted the willful misconduct of its subcontractors, does not amount to an 'accident' or 'occurrence.'"[51]

We do not find the allegations of the Underling Action permit a departure under governing Pennsylvania law from *Kvaerner* and *Gambone* and their progeny. The essence of Russell Construction's allegations against Moreco is its workmanship and the foreseeable consequences of that workmanship. We find no possibility Moreco's failure to properly tarp can be considered accidental. Someone had to fail to act; it is not a fortuity. Liberally construing the Underlying Action and resolving all doubts as to coverage, we find no duty to defend.

**B.    State Farm does not owe a duty to indemnify.**

State Farm additionally claims no duty to indemnify Moreco. "Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense."[52] Having found no duty to defend Moreco in the Underlying Action, State Farm has no duty to indemnify Moreco under the Policy. State Farm is entitled to declaratory judgment finding no duty of indemnification.

**III.   Conclusion**

We find none of Russell Construction's allegations against Moreco in the Underlying Action could potentially fall within an "occurrence" under the Policy. Rainwater entering a home

when the roofing subcontractor does not properly cover the roof with tarp as required by his hiring contractor is not a covered "occurrence." State Farm has no duty to defend or indemnify Moreco, and summary judgment is entered in State Farm's favor and against Moreco. The accompanying Order enters Declaratory Judgment finding State Farm does not owe a duty to defend or indemnify Moreco.

---

[1] Under our Orders, the parties jointly submitted a Statement of Undisputed Material Facts (ECF Doc. No. 17). State Farm submitted a Statement of Undisputed Material Facts ("SUMF") in support of its Motion for Summary Judgment (ECF Doc. No. 18-3). Moreco did not respond to State Farm's SUMF, but because State Farm's SUMF is virtually identical to the parties' joint submission (ECF Doc. No. 17), we refer here to State Farm's SUMF.

[2] SUMF ¶ 1.

[3] SUMF ¶ 2.

[4] SUMF ¶ 3.

[5] SUMF ¶ 5.

[6] SUMF ¶ 6.

[7] SUMF ¶ 7.

[8] SUMF ¶ 9.

[9] SUMF ¶¶ 10-11; Underlying Action at ¶ 8 (Appendix (App.) MSJ083) (ECF Doc. No. 18-4).

[10] SUMF ¶ 12; Underlying Action at ¶ 8 (App. MSJ083).

[11] SUMF ¶ 13.

[12] SUMF ¶¶ 15-16.

[13] SUMF ¶¶ 17-18.

[14] Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[15] *Ramara, Inc. v. Westfield Ins. Co.*, No. 15-1003, 2016 WL 624801, at *8 (3d Cir. Feb. 16, 2016) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005)).

[16] *Id.* (citing *Sikirica*, 416 F.3d at 226).

[17] *Id.* (emphasis in original).

[18] *Erie Ins. Exchange v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987) (citing *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484 (Pa. 1959)); *see also IDS Prop. Cas. Ins. Co. v. Schonewolf*, 111 F.Supp.3d 618, 623 (E.D. Pa. 2015).

[19] *Ramara*, at *8. In *Ramara*, our Court of Appeals noted Pennsylvania's "four corners" rule, also known as the "eight corners" rule, directing "a court in deciding if there is coverage [to] look at both the insurance policy and the underlying complaint." *Id.* at *8, n.9.

[20] *Id.* at *9 (quoting *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)).

[21] *Id.*

[22] *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 170 (Pa. 2005).

[23] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) ("*Kvaerner*").

[24] *Id.* (quoting *401 Fourth St.*, 879 A.2d at 170).

[25] App. MSJ062.

[26] App. MSJ075.

[27] *Kvaerner*, 908 A.2d at 891.

[28] *Id.* at 891-92.

[29] *Id.* at 892.

[30] *Id.* at 897-98.

[31] *Id.* at 899 (footnotes omitted).

[32] *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706 (Pa. Super. 2007), *appeal denied*, 963 A.2d 471 (Pa. 2008) ("*Gambone*").

[33] *Id.* at 713.

[34] *Id.* at 709-10.

[35] *Id.* at 713.

[36] *Id.*

[37] *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 597-98 (3d Cir. 2009) ("*Nationwide Mutual*").

[38] *Specialty Surfaces Int'l., Inc. v. Continental Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010) ("*Specialty Surfaces*").

[39] *Zurich American Ins. Co. v. R.M. Shoemaker Co.*, 519 F.App'x 90, 92-93 (3d Cir. 2013) (applying *Kvaerner*).

[40] *Id.* at 93 (applying *Gambone*).

[41] *Id.* (applying *Gambone, Specialty Services*, and *Nationwide Mutual*).

[42] We are persuaded by the reasoning of district courts in this Circuit denying insurance coverage for faulty workmanship with similar "occurrence" language in CGL policies regardless of whether the underlying claim is couched in contract or tort theories. *See State Farm Fire & Cas. Co. v. Brighton Exteriors, Inc.*, No. 14-3987, 2015 WL 894419 (E.D. Pa. Mar. 3, 2015); *State Farm Fire & Cas. Co. v. McDermott*, No. 11-5508, 2014 WL 5285335 (E.D. Pa. Oct. 15, 2014); *Roman Mosaic and Tile Co. v. Liberty Mut. Ins. Co.*, No. 11-6004, 2012 WL 1138587 (E.D. Pa. Apr. 5, 2012); *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F.Supp.2d 683 (E.D. 2012); *Meridian Mut. Ins. Co. v. James Gilligan Builders*, No. 08-1995, 2009 WL 1704474 (E.D. Pa. June 18, 2009); and *Transportation Ins. Co. v. C.F. Bordo, Inc.*, No. 06-2386, 2009 WL 839366 (M.D. Pa. Mar. 30, 2009).

[43] Underlying Action at ¶ 8 (App. MSJ083).

[44] Underlying Action at ¶ 10 (App. MSJ083).

[45] Underlying Action at ¶ 22 (App. MSJ086-087).

[46] *Id.* (App. MSJ087).

[47] Judge Robreno rejected this similar argument in *Meridian Mut. Ins. Co. v. James Gilligan Builders*, *supra*, n. 42. Judge Robreno found the "gist" of the underlying action sounded in contract, not tort, rejecting the insured's argument it did not perform work under any contract:

> Although Gilligan [insured] agrees that a breach of contract claim would not trigger coverage under the commercial general liability policy, it argues that it did not perform any work in this case pursuant to any agreement with the Hallers [homeowners] and disputes whether there is a contract between it and the Bentley Defendants [home builders]. Gilligan misses the point. Whether or not Gilligan had a written agreement with the Hallers or the Bentley Defendants, Gilligan performed pursuant to a mutual understanding with the Bentley Defendants. It is the breach of that understanding to perform certain work for the Bentley Defendants for consideration, whether written or oral, formal or informal, implied or express, as a principal or as an agent of the Bentley Defendants, rather than of some duty imposed by social policy that is at issue.

*Meridian Mut. Ins. Co.*, 2009 WL 1704474 at *5, n.10.

[48] *Wausau Underwriters Ins. Co. v. State Auto. Mut. Ins. Co.,* 557 F.Supp. 2d 502 (D.N.J. 2008); *Schuylkill Stone Corp. v. State Auto. Ins. Co.,* 735 F.Supp. 2d 150 (D.N.J. 2010); *Nat'l Fire Ins. Co. of Hartford v. Robinson Fans Holdings, Inc.*, No. 10-1054, 2011 WL 2842303 (W.D. Pa. July 18, 2011).

[49] *Robinson Fans* addresses the insurer's motion for reconsideration of the court's order finding a duty to defend. In its original opinion, the court examined the duty to defend in the context of defective product design. *See Nat'l Fire Ins. Co. of Hartford v. Robinson Fans Holding, Inc.*, No. 10-1054, 2011 WL 1327435 (W.D. Pa. Apr. 7. 2011).

[50] Underlying Action at ¶ 22 (MSJ086).

[51] *Zurich Am. Ins. Co.*, 519 F.App'x at 94.

[52] *Ramara*, 2016 WL 624801, at *8 (quoting *Sikirica*, 416 F.3d at 225); *see also Westfield Ins. Co.*, 856 F.Supp.2d at 702.